UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

In re:                                  Chapter 11
Three Seas Realty II, L.L.C.            Bankruptcy No. 10-00948 S

RULING: DEBTOR'S MOTION TO EXTEND AUTOMATIC STAY;
DEBTOR'S MOTION TO DISMISS OR CONVERT CASE

The matter before the court is a motion by Three Seas Realty II, L.L.C. (hereinafter "Debtor") asking the court to extend the automatic stay temporarily to prevent Kingwood, L.L.C, a secured creditor, from proceeding with a civil action against the Debtor's sole member and his former spouse. The Debtor asks that if the court does not extend the stay as requested, that the court either dismiss this Chapter 11 case or convert it to a Chapter 7 case. The motion was filed June 24, 2010 (doc. 75).

The motion was served on creditors and parties in interest. Kingwood, L.L.C (hereinafter "Kingwood") filed a resistance (doc. 83), asking that the motion be denied. West Gate Bank, also a secured creditor, filed a response indicating that it took no position on the extension of the stay, but in its opinion, the case should remain under Chapter 11 (doc. 88).

Hearing on the motion was held July 7, 2010 in Sioux City. Donald L. Swanson appeared as attorney for the Debtor. A. Frank Baron appeared as attorney for Kingwood. West Gate did not

appear.  John F. Schmillen appeared as attorney for Habbo G. Fokkena, the United States trustee.

The Debtor asks that the automatic stay arising under 11 U.S.C. § 362(a), by virtue of its bankruptcy petition, be extended to stay a civil action filed by Kingwood against the Debtor's sole member, John V. Harker.  At the hearing, the Debtor orally amended the motion to obtain the same extension for Harker's former spouse, Cheri L. Harker.  Although described as an extension of the automatic stay to protect a non-debtor, the request, in effect, seeks a temporary injunction pursuant to the court's powers under 11 U.S.C. § 105(a).  The request should have been filed as an adversary proceeding.  Fed.R.Bankr.P. 7001(7).  Nonetheless, Kingwood does not object to the form of the request, and I conclude that treating the request as a contested matter proceeding does not deprive the court of jurisdiction.

## FINDINGS OF FACT

The Debtor, a limited liability company, filed its Chapter 11 bankruptcy petition on April 8, 2010 (doc. 1).  The Debtor is a real estate development company.  Single asset real estate, as defined in 11 U.S.C. § 101(51B), generates substantially all of the Debtor's income.  The real property comprises parcels located in Arnold's Park, Iowa, adjacent to Lake Okoboji.  The

Debtor's business is the construction, marketing, and sale of condominium units within the property.

John Harker is the sole and managing member of the company. There are no employees. He is responsible for management, construction and marketing. He works with contractors, a real estate agent, and potential buyers. Also, he is the responsible person regarding the Debtor's bankruptcy case. He spends 25% of his working time on the Debtor's business. He spends 75% of his working time on two other businesses he owns through another company. There was no evidence of the amount of time spent on work.

The Debtor's only income is from the sales of condominium units and from any capital contributions which are made by Harker. Prior to the filing of the Debtor's petition, Harker paid the Debtor's bankruptcy attorneys for prepetition services. Harker has also paid the Debtor's attorneys $50,000.00 as a prepetition retainer. Harker believes this was treated by the Debtor as a contribution to capital. The Debtor's attorneys have asked Harker for an additional retainer payment of $20,000.00.

On June 21, 2010, Kingwood filed a civil action against Harker and his former spouse in the Iowa District Court for Dickinson County, Law No. LACV024156 (Exhibit 1). Kingwood seeks to recover from the Harkers on the promissory note they

allegedly co-signed with the Debtor and allegedly also guaranteed. In its state court petition, Kingwood contends there is a principal amount due of $2,670,000.00 plus past due interest, and interest accruing at a default rate of 12%. The suit has been filed but not yet served on John Harker. John Harker disputes that his former spouse signed the note or the guarantee. The decree dissolving the Harkers' marriage entered about one month ago. The decree was not offered into evidence.

At the end of May 2008, Harker issued a financial statement which showed his net worth at about $5.8 million. There was no evidence of his net worth or of his income and expenses at the time of the hearing.

The Debtor estimates Kingwood's claim against it at $2,670,000.00. Kingwood's claim is secured by a mortgage against the Debtor's real estate. The Debtor is indebted also to West Gate Bank, whose claim is estimated by the Debtor at $3,206,588.50. West Gate is secured also by the Debtor's real estate. Kingwood and West Gate Bank disagree about whose lien has priority. The Debtor believes that there are several mechanic's lien claims against the real estate. The Debtor has filed an adversary proceeding seeking a determination as to the priority of the secured claims.

The Debtor filed a plan on July 2, 2010 (Exhibits 3, A). The hearing exhibits which are copies of the Debtor's plan are

4

not identical.  The Debtor's Exhibit 3 contained no attachments. Kingwood's Exhibit A contained as attachments an Exhibit E (projections) and an Exhibit F (a liquidation analysis). Exhibit 3 is the correct copy of the plan.  Kingwood apparently offered into evidence a copy of the plan that is attached to the disclosure statement (doc. 82).  The exhibits, E and F, are attachments to the disclosure statement, not to the plan. Nonetheless, they were offered and admitted into evidence without objection.

    The plan proposes that the Debtor would continue to market condominium units.  Proceeds of sales would be held until a court determination of the adversary proceeding on the priority of liens.  Once lien priority is determined, proceeds of sales would be paid to creditors.  Upon a sale, the Debtor would pay any unpaid fees to the U.S. trustee under 28 U.S.C. § 1930(a)(6).  Classified claims would be paid in order of priority.  These claims include class 1, West Gate Bank, a secured creditor; class 2, Kingwood Bank, a secured creditor; class 3, mechanic's lienholders; class 4, allowed unsecured claims; class 5, equity interests.  The mortgage holders (classes 1 and 2) would be paid the amounts of their allowed claims in order of lien priority.  The holders of allowed unsecured claims would be paid pro rata after the payment in full of the mortgagees and the mechanic's lienholders.

According to the plan, holders of administrative expense claims under 11 U.S.C. § 503 would be paid after payment of the U.S. trustee's quarterly fees and payment of the classified claims (classes 1-5), including equity interests.  Exhibit 3, § 3.01.

The plan provides that if the Debtor does not enter into contracts to sell at least four units by October 31, 2010, it would pursue an auction sale of the development and unsold units as an entirety.  Any such sale would take place prior to February 28, 2011.  If it did not, the plan would "terminate," and the automatic stay would be "lifted" (Exhibit 3, § 7.01).  If the minimum of four units were sold by October 31, 2010, "the Plan shall continue until November 1, 2011 and the automatic stay shall remain in effect until such time" (id.).

So long as the plan remains in effect, each sale of a unit would be "structured as a sale under § 363 of the Code, shall require approval of the Court and will be made free and clear from the liens of any creditor" (id.).

The plan is essentially a liquidation plan, whether liquidation is by sales in the ordinary course of business or by auction sale.  At some point, failing either, the stay would cease to prohibit foreclosure by lienholders.

The liquidation analysis attached to Exhibit A compares the Debtor's estimate of the distributions under the proposed plan and under a Chapter 7 liquidation.  The Debtor estimates that

under a Chapter 7 liquidation, West Gate Bank, if the first mortgagee, would be paid in full.  However, it makes no calculation of interest payments on the first mortgage note.  It estimates that Kingwood, if a second priority mortgagee, would not be paid in full.  Under the plan, West Gate Bank would be paid in full on a first mortgage, but without any allowance of post-petition interest.  Kingwood would not be paid in full (Exhibit A, liquidation analysis; Claim 11).  Under either a Chapter 7 or Chapter 11 liquidation, the Debtor estimates that mechanic's lienholders, unsecured creditors, and equity interests would receive no distribution.  Thus, in the Debtor's estimation, only Kingwood would be better off under the Chapter 11 plan, if confirmed.

                              DISCUSSION

     The Debtor asks the court to enjoin Kingwood's state court lawsuit against the Harkers until the end of 2010 to give the Debtor an opportunity to confirm a plan and to implement it.

     This court's power to enjoin Kingwood from continuing the lawsuit derives from 11 U.S.C. § 105(a).  It permits the court to issue any order necessary or appropriate to carry out the provisions of title 11.

     The Debtor seeks a "temporary" or preliminary injunction. "A request by a debtor for an injunction under section 105(a) pending confirmation of the debtor's plans for reorganization is

                                   7

regarded as a request for a preliminary injunction." Nevada Power Co. v. Calpine Corp. (In re Calpine Corp.), 365 B.R. 401, 409 (S.D.N.Y. 2007) (citation omitted).

"The power to enjoin creditors' actions against a co-debtor or guarantor should only be used in limited circumstances where a determination is made that failure to so enjoin would adversely affect the bankruptcy estate and pressure the debtor through that third party." River Family Farms, Inc. v. Federal Land Bank of Omaha (In re River Family Farms, Inc.), 85 B.R. 816, 819 (Bankr. N.D. Iowa 1987).

"[C]ourts have granted injunctions, at least on a temporary basis, to restrain actions against a principal of the debtor upon a showing that the non-debtor's time, energy and commitment to the debtor are necessary for the formulation of a reorganization plan." Fowler v. C.H. Masland & Sons (In re Fowler Floor & Wall Covering Co., Inc.), 93 B.R. 55, 57 (Bankr. M.D. Pa. 1988) (quoting In re Monroe Well Service, Inc., 67 B.R. 746, 751 (Bankr. E.D. Pa. 1986)).

A preliminary injunction is only warranted if the Debtor can show a substantial and adverse impact by the action on the debtor's ability to reorganize. Gathering Restaurant, Inc. v. First National Bank of Valparaiso (In re Gathering Restaurant, Inc.), 79 B.R. 992, 1000 (Bankr. N.D. Ind. 1986).

In determining whether to grant the Debtor's request, the court considers the usual factors governing injunctive relief. In the bankruptcy context, the court evaluates—

> (1) whether there is a likelihood of successful reorganization; (2) whether there is imminent irreparable harm to the estate in the absence of an injunction; (3) whether the balance of harms tips in favor of the moving party; and (4) whether the public interest weighs in favor of an injunction.

In re Calpine Corp., 365 B.R. at 409.

I find that Harker's participation in the bankruptcy case is critical to the Debtor's reorganization process. Nonetheless, Harker does not devote his full time to the Debtor. I find the evidence insufficient to show that the lawsuit by Kingwood would take so much of Harker's time and effort away from the Debtor's business as to substantially and adversely affect the Debtor's reorganization prospects. Moreover, Harker's testimony did not emphasize the seriousness of the distraction from the reorganization that would be imposed by the lawsuit. Instead, he emphasized that he did not want to fund both the legal fees of the Debtor in the bankruptcy case and the legal fees which would be necessary to defend the Kingwood lawsuit. There is no evidence of his inability to do so. Also there was no testimony by Harker that he intended to provide funds for reorganization beyond those for legal fees. His inability to fund the legal fees in bankruptcy and the legal

9

fees for defending the Kingwood suit, if proven, might have persuaded the court otherwise on the issue of irreparable harm. As to Cheri Harker, there was no evidence that failing to stay the Kingwood action against her would detrimentally affect the Debtor's reorganization. There was only the bare statement that it would redound to Mr. Harker's detriment. Debtor has failed to prove imminent and irreparable harm if the preliminary injunction is not granted.

As to the likelihood of success of the Debtor's effort to reorganize, at least as regards the proposed plan, I conclude that the proposed plan is not confirmable. The plan violates the Code's requirements for payment of administrative claims. <u>See</u> Exhibit 3, § 3.01; Exhibit F to Kingwood Exhibit A. Administrative claims under 11 U.S.C. § 503(b) have priority under 11 U.S.C. § 507(a)(2). These claims must be paid in full on the effective date of the plan. 11 U.S.C. § 1129(a)(9)(A). Yet the plan states that they will be paid after payment of all U.S. trustee's fees and classified claims, including unsecured claims and equity interests. Exhibit 3, § 3.01.

The liquidation analysis recognizes that under the plan the claim of West Gate Bank is fully secured in the amount of $3,206,588.50, and the Kingwood claim in the amount of $2,670.000.00 is partially, but significantly, secured. However, the plan does not provide for payment of interest to

West Gate Bank, as first mortgagee.  Thus, the Debtor would be unable to cram down the proposed plan against the non-acceptance by West Gate Bank.  <u>See</u> 11 U.S.C. § 1129(b)(2)(A)(i)(II).

Last, the plan provides for the Debtor's discharge upon confirmation.  Plan, Article X.  A reasonable reading of the proposed plan is that it provides for liquidation of the Debtor's assets.  Thus, the plan's discharge provision violates 11 U.S.C. § 1141(d)(3).  The plan provides for liquidation of substantially all of the Debtor's assets; it does not appear that the Debtor will continue in business; and the Debtor, as a limited liability company, would not receive a discharge in a Chapter 7 case.  Moreover, if the Debtor did intend to continue in business after the liquidation of its project, Harker's retention of his membership equity interest would violate the absolute priority rule, inasmuch as the Debtor does not contemplate payment in full to unsecured creditors or mechanic's lienholders.

The Debtor has failed to show a likelihood of success on the merits.  Also, if now the proposed plan does not have a reasonable possibility of being confirmed, Kingwood would be entitled to relief from the automatic stay against the Debtor.  11 U.S.C. § 362(d)(3)(A).  If Kingwood would be entitled to relief against the Debtor on the basis of the proposed plan's

11

non-confirmability, then there would be no reason to stay Kingwood's action against the Harkers.

I find and conclude that the Debtor has failed to prove the factors which would warrant enjoining Kingwood's action against the Harkers. The Debtor asks that if the court denies its request for the injunction, that it enter an order either dismissing the case or converting it to Chapter 7. The U.S. trustee recommends that the court convert the case to Chapter 7 so that a trustee can examine if any assets can be recovered and administered for the benefit of creditors.

I find that dismissal is in the best interests of creditors. Two mortgagees and several mechanic's lienholders have claims against the Debtor's single asset real estate. The Debtor's liquidation analysis indicates its belief that there would be no assets available for distribution to unsecured creditors. Indeed, the claims deadline in the case was July 7, 2010, and it appears that only three non-priority, unsecured claims were filed, totaling less than $20,000.00. No discharge would be available to the Debtor in a Chapter 7. A state court, in a foreclosure action, can resolve the priority dispute among the secured creditors. A continued bankruptcy case would not likely prevent the need for a foreclosure action, and would add another layer of expense. I find that dismissal is in the best interest of creditors.

IT IS ORDERED that the Debtor's request for a court order enjoining Kingwood L.L.C. from continuing its civil action against John V. Harker and Cheri L. Harker is denied.

IT IS FURTHER ORDERED that the Debtor's alternative request for dismissal of the case is granted.  This Chapter 11 case is dismissed.

IT IS FURTHER ORDERED that judgment shall enter accordingly.

DATED AND ENTERED:
July 19, 2010

*William L. Edmonds, Bankruptcy Judge*